# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br>Plaintiff,<br>v.<br>CENTRAL INTELLIGENCE AGENCY,<br>Defendant. | Civil Action No. 1:24-1537 (PLF) |

**DECLARATION OF MARY C. WILLIAMS,**
**LITIGATION & INVESTIGATIONS INFORMATION REVIEW OFFICER,**
**INFORMATION REVIEW AND RELEASE DIVISION,**
**CENTRAL INTELLIGENCE AGENCY**

I, MARY C. WILLIAMS, hereby declare and state:

## I. INTRODUCTION

1. I currently serve as the Litigation & Investigations Information Review Officer ("LI/IRO") for the Information Review and Release Division at the Central Intelligence Agency ("CIA" or "Agency"), a position I have held since November 2023. As the LI/IRO, I am responsible for ensuring that any determinations as to the release or withholding of documents or information under my purview are proper and do not jeopardize the national security of the United States. I am also responsible for, among other things, the classification review of CIA documents and information that may be the subject of court proceedings

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526. This means I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

3. Prior to serving as the LI/IRO, I served as the Acting Information Review Officer ("IRO") for the Litigation Information Review Office for four months, performing the same duties I presently perform as the LI/IRO. Prior to that, I served as the Criminal and Civil Team ("CCT") Lead in the Litigation Information Review Office for 45 months, where I was responsible for, among other things, reviewing CIA information that is subject to the Classified Information Procedures Act ("CIPA") (18 U.S.C. App. 3) in connection with criminal proceedings. As CCT Lead, I was responsible for ensuring that any determinations to release Agency information under my purview were proper and did not jeopardize the national security. Prior to becoming CCT Lead, I served as an Associate Information Review Officer for 19 months. In that role, I was responsible for conducting second-line reviews of Agency

information subject to pending litigation and making classification and release determinations regarding such information when necessary. Prior to that, I served as a security specialist with the Department of Justice for over 15 years.

4. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

## II. PURPOSE OF THIS DECLARATION

5. I am submitting this declaration in support of the Government's Motion for Summary Judgment filed by the United States Department of Justice in this proceeding.

6. The purpose of this declaration and accompanying *Vaughn* Index is to provide the court with a description of the records at issue in this case and justify, to the extent possible on the public record, the CIA's invocation of FOIA Exemptions (b)(3) and (b)(6) to withhold information in responsive records. This declaration also explains the CIA's invocation of Glomar, which rests on Exemptions (b)(1) and (b)(3), in responding to Plaintiff's FOIA requests by neither confirming nor denying the existence or nonexistence of records where doing so would itself reveal information that is

classified or statutorily-protected. For the Court's convenience, the remainder of this declaration is divided into the following parts: Part III of this declaration will describe Plaintiff's FOIA requests and the case history, Part IV will discuss the CIA's assertion of *Glomar* in response to portions of Plaintiff's requests, Part V will describe the CIA's search for responsive records as to portions of Plaintiff's requests for which the CIA did not assert Glomar, and Part VI will discuss the basis for the exemptions applied to the documents that CIA withheld in part.

**III. PLAINTIFF'S FOIA REQUESTS AND PROCEDURAL HISTORY**

7. In March 2024, Plaintiff submitted three FOIA requests to the CIA that serve as the subject of this litigation:

- On March 22, 2024, Plaintiff sought "All documents and communications referring or relating to the Department of Justice or Internal Revenue Service investigation of Robert Hunter Biden, DPOB: February 4, 1970, Wilmington, DE, from January 1, 2018, to December 31, 2023," and, "All documents and communications referring or relating to Attorney Patrick Kevin Morris, including but not limited to requests or efforts to interview Mr. Morris concerning Robert Hunter Biden, from January 1, 2018, to December 31, 2023." ("FOIA Request 1");[1]
- On March 27, 2024, Plaintiff sought "All records of communications including, but not limited to, emails and text messages between officials of the CIA and officials of the U.S. Justice Department regarding Hunter Biden and/or Hunter Biden's lawyer, Kevin

[1] See Exhibit A.

Morris from January 1, 2021 to present." ("FOIA Request 2");[2]

- On March 27, 2024, Plaintiff sought "All handwritten notes, transcripts, reports, memoranda, calendar entries and other records relating to any meetings between CIA officials and Justice Department officials regarding Hunter Biden's lawyer, Kevin Morris from January 1, 2021 to present." ("FOIA Request 3");[3]

8. The CIA sent a letter acknowledging FOIA Request 1 on April 5, 2024, and assigned this request FOIA number F-2024-01529.[4] The CIA sent a letter acknowledging FOIA Request 2 on April 9, 2024, and assigned this request FOIA number F-2024-01558.[5] The CIA received FOIA Request 3 but did not send an acknowledgment letter; the Agency processed the request using FOIA number F-2024-02115.

9. On May 24, 2024, Plaintiff filed the above-captioned civil action against the CIA seeking production of records in response to its FOIA requests. The CIA filed an Answer on 29 July 2024.

10. The CIA made an initial production by letter dated 22 August 2025.[6] After conducting an additional review, the CIA issued its final response by letter dated 19 March 2026,[7] stating

---

[2] See Exhibit B.
[3] See Exhibit C.
[4] See Exhibit D.
[5] See Exhibit E.
[6] See Exhibit F.
[7] See Exhibit G.

that the CIA had not located any additional responsive records. The letter also stated:

> To the extent that your request also seeks records, if any exist, that would reveal an unacknowledged or classified association with the subject(s) of your request, we can neither confirm nor deny the existence or nonexistence of such records, in accordance with Section 3.6(a) of Executive Order 13526. The admission of existence or nonexistence of such records is a fact that is exempt under FOIA. You may consider this finding a denial of this portion of your request pursuant to FOIA exemptions (b)(1) and (b)(3). Exemption (b)(3) pertains to information exempt from disclosure by statue. In this case, the relevant statutes are Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, as amended, and Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), as amended.

This language is known as a *Glomar* response.[8]

11. In total, the CIA located two responsive documents, releasing both documents in segregable form with redactions made on the basis of FOIA Exemptions (b)(3) and (b)(6). A Vaughn Index identifying these withholdings is attached herein as **Exhibit H.** The Vaughn Index provides a description of the referenced documents and information, as well as a further explanation of the reasons the CIA withheld information within these documents in this case.

---

[8] The origins of the Glomar response date back to the D.C. Circuit's decision in *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), which affirmed the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning the CIA's reported contacts with the media regarding Howard Hughes' ship, the Hughes' Glomar Explorer.

## IV. THE CIA'S ASSERTION OF GLOMAR AS TO PORTIONS OF PLAINTIFF'S REQUESTS

12. In most cases, upon receipt of a FOIA request, a federal agency will conduct searches for any responsive documents in its holdings and provide the requester with all segregable, non-exempt information responsive to the request. In those instances, the fact that records responsive to a given request exist is not itself classified or otherwise exempt. However, in cases such as this one, where a confirmation or denial of the existence of responsive records would itself reveal a classified fact, the CIA routinely asserts a *Glomar* response in order to protect that fact from disclosure. Here, acknowledging the existence or nonexistence of certain records responsive to Plaintiff's FOIA requests would reveal a classified and statutorily-protected fact within the meaning of FOIA Exemptions (b)(1) and (b)(3).

13. FOIA Exemption (b)(1) protects from disclosure information that is properly classified. Section 1.1(a) of Executive Order 13526 provides that information may be originally classified only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of

information listed in section 1.4 of Executive Order 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the original classification authority is able to identify or describe the damage.

14. Consistent with sections 1.1(a) and 3.6(a) of Executive Order 13526, as an officer with original classification authority, I have determined that the fact of the existence or nonexistence of certain records responsive to Plaintiff's FOIA requests is owned by and is under the control of the U.S. Government and it is currently and properly classified. The fact of whether the CIA possesses records in response to certain Plaintiff's FOIA requests pertains to "intelligence activities (including covert action), [or] intelligence sources or methods" and "foreign relations or foreign activities of the United States, including confidential sources" within the meaning of sections 1.4(c) and 1.4(d) of the Executive Order.

15. The CIA consistently issues *Glomar* responses when--as is the case here--a FOIA request seeks information concerning particular individuals. The CIA also consistently issues *Glomar* responses when--as is also the case here--a FOIA request seeks information concerning the CIA's involvement in law enforcement

investigations. Given the CIA's mandate to collect and analyze foreign intelligence and to conduct counterintelligence, there are many times when the Agency cannot reveal whether it possesses records regarding a particular individual and/or a particular law enforcement investigation. This is especially the case when substantively responding to a request would tend to reveal a particular intelligence activity or otherwise reveal previously undisclosed information about CIA resources, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, and/or resources, or the lack thereof.

16. To maintain the effectiveness of the *Glomar* response, the CIA invokes the response consistently, even where the nonexistence of records appears to be of little consequence. If the agency answered with a *Glomar* response only in instances where it possesses responsive records, then the Glomar response effectively would serve as an admission that records exist, which could have the effect of revealing classified information.

17. I have determined that, in this instance, confirming or denying the existence of records responsive to Plaintiff's FOIA requests reasonably could be expected to cause damage to national security by disclosing intelligence activities, sources, and methods. Disclosing the existence of responsive documents during the referenced time periods would tend to

reveal the CIA's intelligence priorities or areas of focus concerning certain people. Conversely, disclosing the nonexistence of these records might reveal intelligence gaps or areas of lessened scrutiny, which also reveals information regarding intelligence sources and methods.

18. Terrorist organizations, foreign intelligence services, and other hostile groups continually gather details regarding the CIA's specific intelligence capabilities, authorities, and interests and attempt to use this information to their advantage. In order to effectively collect and analyze foreign intelligence and counterintelligence, the Agency must avoid disclosing the subjects of its collection and the manner in which the Agency pursues its targets. Confirming or denying the existence of responsive documents concerning people, locations, or organizations at issue in the Plaintiff's FOIA requests, and, as a consequence, highlighting the methods by which Agency officers engage in intelligence gathering as well as other sources and methods, reasonably could be expected to cause damage to national security because such an admission would reveal broader patterns about the intelligence collection priorities of the Agency and sensitive details about the nature and/or scope of the CIA's intelligence sources, methods, and activities, which could, in turn, be exploited by adversaries.

19. Moreover, FOIA exemption (b)(3) protects information that is specifically exempted from disclosure by statute. 5 U.S.C. § 552 (b)(3). A withholding statute under Exemption (b)(3) must: (a) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establish particular criteria for withholding or refer to particular types of matters to be withheld.

20. Section 102A(h)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(h)(1) (the "National Security Act"), provides that the Director of National Intelligence ("DNI") "shall protect . . . intelligence sources and methods from unauthorized disclosure." Accordingly, the National Security Act constitutes a federal statute which, "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. §552(b)(3). Under the direction of the DNI pursuant to section 102A of the National Security Act, as amended, and in accordance with section 1.6(d) of Executive Order 12333, the Director of the CIA is required to protect CIA intelligence sources and methods from unauthorized disclosure. Accordingly, the CIA relies on the National Security Act to withhold information, as described above, that would reveal intelligence sources or methods.

21. As discussed above, acknowledging the existence or nonexistence of records responsive to these FOIA requests would

reveal intelligence sources and methods, which the National Security Act protects from disclosure. Accordingly, the fact of the existence or nonexistence of records responsive to portions of these three FOIA requests is exempt from disclosure under Exemption (b)(3), in conjunction with the National Security Act.

22. The CIA's final response letter dated 19 March 2026 (see **Exhibit G**) also cites Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), as a basis for its assertion of a Glomar response. The statute provides that the CIA shall be exempted from, provisions of any law that require the publication or disclosure of the "organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency." Here, pursuant to the CIA Act, acknowledging the existence or nonexistence of records responsive to these FOIA requests would reveal information protected from disclosure by the CIA Act. For example, the Agency's involvement--or non-involvement in an investigation--could reveal information about its functions or how it is organized.

23. For these reasons, I have determined that confirming the existence or nonexistence of records responsive to portions of Plaintiff's FOIA requests reasonably could be expected to cause damage to national security and that such confirmation is, therefore, a currently and properly classified fact exempt from

disclosure pursuant to Exemption (b)(1). Additionally, because acknowledging the existence or nonexistence of responsive records would reveal intelligence sources and methods, this information is also protected under Exemption (b)(3) in conjunction with the National Security Act.

## V. CIA's SEARCH FOR RESPONSIVE RECORDS

24. As to the portions of Plaintiff's requests for which the CIA did not assert Glomar, the Agency conducted thorough and diligent searches of Agency record-keeping systems.[9] The CIA personnel who performed these searches have access to pertinent records, are knowledgeable about the Agency's record-keeping systems, are qualified to search those systems, and regularly search for records in the course of their professional duties.

25. The CIA's searches were reasonably calculated to find records whose existence or nonexistence is not classified or statutorily-protected and are responsive to Plaintiff's requests. CIA data management professionals and custodians searched for responsive records in the following types of record-keeping systems: (1) indices of all archived hard-copy Agency records; (2) electronic versions of all Agency records that have been reviewed and/or compiled for potential public

[9] Information about the CIA's records systems and personnel is classified and is protected from disclosure under the CIA Act of 1949, the National Security Act of 1947, and other applicable statutes, regulations, and executive orders. As a result, the CIA is unable to provide more details about its search in this unclassified declaration.

release; (3) multiple repositories of non-operational intelligence reporting from various sources; (4) electronic mail systems; (5) database for managing, coordinating, and archiving internal and external action items; and (6) files maintained by individual custodians, as appropriate. Where hard-copy files were identified as possibly containing relevant records, those files were hand searched in their entirety without the use of terms or filtering mechanisms.

26. Searches were conducted based on reasonably described terms and timeframes in the requests from Plaintiffs. When names were searched, multiple variants of the names were used to ensure that the results were as comprehensive as possible. The CIA used the following search terms to search for records responsive to Plaintiff's requests that were not covered by the Glomar response:

- "Patrick Kevin Morris / Kevin Morris (and additional name variants);"
- "Robert Hunter Biden / Hunter Biden (and additional name variants) AND laptop;"
- "Robert Hunter Biden / Hunter Biden (and additional name variants) AND '51 formers.'"

27. The CIA's initial searches returned a large number of publicly-available news reports in the CIA's possession. The Plaintiff agreed to exclude publicly-available news reports

without commentary from the universe of records responsive to its FOIA requests. The CIA then re-ran its searches with the news reports excluded.

28. In total, the CIA identified two documents as responsive.

## V. <u>FOIA EXEMPTIONS APPLICABLE TO THE CIA DOCUMENTS</u>

29. As explained above, in response to Plaintiff's FOIA requests, the CIA located two responsive records, which it released in part. These two documents are unclassified letters sent by the CIA in response to inquiries from members of the House Committee on Oversight and Accountability.

30. The CIA conducted a page-by-page and line-by-line review of these documents, and released all reasonably segregable, non-exempt information. After careful review of these documents, I determined that no additional information can be released without jeopardizing statutorily-protected information or individuals' personal privacy that outweighs the public's interest in disclosure. The Agency invokes FOIA exemptions (b)(3) and (b)(6) to withhold this information. Each is described below.

### A. <u>Information Withheld Under FOIA Exemption (b)(3)</u>

31. As set forth above, FOIA Exemption (b)(3) protects information that is specifically exempted from disclosure by statute. 5 U.S.C. § 552 (b)(3). A withholding statute under

Exemption (b)(3) must: (a) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establish particular criteria for withholding or refer to particular types of matters to be withheld.

32. Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), provides that the CIA shall be exempted from the provisions of any law which requires the publication or disclosure of the "organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency." The CIA Act therefore constitutes a federal statute that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

33. Here, the CIA withheld contact information for Agency personnel and the name of a CIA employee. This information is protected from disclosure by the CIA Act. Exemption (b)(3) does not require the CIA to identify and describe the damage to national security that reasonably could be expected to result in harm should the information be disclosed. Accordingly, the CIA withheld this information from public release under Exemption (b)(3).

### C. Information Withheld Under FOIA Exemption (b)(6)

34. FOIA Exemption (b)(6) protects from disclosure "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Courts have broadly construed the term "similar files" to cover any personally identifying information. In applying Exemption 6, an agency is required to balance the relevant privacy interests of the individuals against the public interest in disclosure. In order to withhold information pursuant to Exemption 6, an agency must determine that the disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The public interest in the FOIA context is defined as information that would "shed[] light on the performance of [an Agency's] statutory duties."

35. The CIA asserted Exemption (b)(6) to withhold personally identifiable information of CIA employees. The employee whose affiliation with the CIA is not publicly acknowledged maintains substantial privacy interests in their employment association with the CIA. If disclosed, the withheld information could be used by nefarious actors to impersonate the employee, steal the employee's identity, or for other malicious purposes. Furthermore, given the unique mission of the CIA, being identified as a CIA employee could subject the individual

to harassment or even jeopardize their safety. Conversely, there is no countervailing public interest in disclosure. Revealing the identity of this individual, or information that would allow them to be identified, will not shed light on the conduct of the Agency's activities or operations beyond what is already being disclosed to the public. Both employees maintain a substantial privacy interest in their signature.

36. In light of the significant privacy interests and the lack of any qualifying public interest, I have found that the personally identifiable information at issue in this case would constitute a clearly unwarranted invasion of personal privacy under the Exemption (b)(6) standard. Therefore, the CIA applied (b)(6) to protect the privacy interest of this individual.

**D. <u>Segregability</u>**

37. In evaluating the responsive records, the CIA conducted a line-by-line review of each document and released all reasonably segregable, non-exempt information. The information withheld by the CIA is protected from disclosure by Exemptions (b)(3) and/or (b)(6) because it is statutorily-protected information and/or would constitute a clearly unwarranted invasion of personal privacy. After reviewing the records at issue, I have determined no additional information can be released without jeopardizing information that falls within the scope of one or more FOIA exemptions.

***

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of August 2026.

Mary C. Williams
Litigation & Investigations
Information Review Officer
Information Review and Release Division
Central Intelligence Agency