UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br>Plaintiff,<br>v.<br>CENTRAL INTELLIGENCE AGENCY,<br>Defendant. | Civil Action No. 24-1537 (PLF) |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(b) and Local Civil Rule 7(h), Defendant respectfully submits this statement of material facts as to which there is no genuine issue:

**I. General Background**

1. In support of its motion, Defendant has submitted a declaration by Mary C. Williams, Litigation & Investigations Information Review Officer, Information Review and Release Division, CIA. *See* Ex. I, Declaration of Mary C. Williams ("Williams Decl."). Ms. Williams is the original classification authority and the records searched are owned by and under the control of the U.S. government. Williams Decl. ¶¶ 1-2, 14.

2. Between March 22 and 27, 2024, Plaintiff submitted three FOIA requests to CIA. Williams Decl. ¶ 7.

3. The first request ("Request No. 1") sought:

> 1. All documents and communications referring or relating to the Department of Justice or Internal Revenue Service investigation of Robert Hunter Biden, DPOB: February 4, 1970, Wilmington, DE.
>
> 2. All documents and communications referring or relating to Attorney Patrick Kevin Morris, including but not limited to requests or efforts to interview Mr. Morris concerning Robert Hunter Biden.

Williams Decl. ¶ 7; *see also* Ex. A.

3. The second request ("Request No. 2") sought:

> All records of communications including, but not limited to, emails and text messages between officials of the CIA and officials of the U.S. Justice Department regarding Hunter Biden and/or Hunter Biden's lawyer, Kevin Morris.

Williams Decl. ¶ 7; *see also* Ex. B.

4. The third request ("Request No. 3") sought:

> All handwritten notes, transcripts, reports, memoranda, calendar entries and other records relating to any meetings between CIA officials and Justice Department officials regarding Hunter Biden's lawyer, Kevin Morris.

Williams Decl. ¶ 7; *see also* Ex. C.

## II. <u>CIA's Searches</u>

5. In response to Plaintiffs' FOIA requests, CIA completed an initial search for potentially responsive records. Williams Decl. ¶ 27.

6. In in its search, CIA used the following search terms:

- "Patrick Kevin Morris / Kevin Morris (and additional name variants);"
- "Robert Hunter Biden / Hunter Biden (and additional name variants) AND laptop;" and
- "Robert Hunter Biden / Hunter Biden (and additional name variants) AND '51 formers.'"

Williams Decl. ¶ 26.

7. CIA's search encompassed six different records systems: "(1) indices of all archived hard-copy Agency records; (2) electronic versions of all Agency records that have been reviewed and/or compiled for potential public release; and (3) multiple repositories of non-operational intelligence reporting from various sources; (4) electronic mail systems; (5) database

for managing, coordinating, and archiving internal and external action items; (6) files maintained by individual custodians." *Id.* ¶ 25.

8. "Where hard-copy files were identified as possibly containing relevant records, those files were hand searched in their entirety without the use of terms or filtering mechanisms." Williams Decl. ¶ 25.

9. The CIA's initial search yielded a large volume of publicly available news reports. *See* Williams Decl. ¶ 27.

10. CIA requested that Plaintiff narrow its requests to exclude such reports from processing. *See* Williams Decl. ¶ 27.

11. Plaintiff agreed to CIA's request. Williams Decl. ¶ 27.

12. CIA personnel "conducted thorough and diligent searches of relevant systems of records" that were "reasonably calculated to find documents . . . responsive to Plaintiff's requests . . . ." Williams Decl. ¶¶ 24-25.

**III. <u>CIA's Withholdings in Its Release</u>**

13. On August 22, 2025, CIA issued an interim response to the subject FOIA requests, releasing, in part, two documents totaling four pages. Williams Decl. ¶¶ 10-11; *see also* Ex. F.

14. The released documents were unclassified letters sent by the CIA in response to inquiries from members of the House Committee on Oversight and Accountability. Williams Decl. ¶ 29; *see also* Ex. F.

15. In these letters, CIA generally denied a whistleblower allegation shared by the members, "[w]ithout confirming or denying the existence of any associations or communications." *See* Ex. F.

16. In its August 22, 2025 release, CIA withheld contact information for Agency personnel under FOIA Exemptions 3; and personally identifiable information about a CIA employee under Exemption 6. Williams Decl. ¶¶ 31-36; *see also* Ex. F.

17. For the information withheld under Exemption 6, CIA is not aware of any countervailing public interest that would be served by the disclosure of the personal information in these categories. Williams Decl. ¶ 35.

18. Moreover, "[i]If disclosed, the withheld information could be used by nefarious actors to impersonate the employee, steal the employee's identity, or for other malicious purposes." Williams Decl. ¶ 35

## IV. <u>CIA's *Glomar* Response</u>

19. On March 19, 2026, CIA issued a final response letter, notifying Plaintiff that the agency had completed processing its FOIA requests. Williams Decl. ¶ 10; *see also* Ex. G.

20. In its final response letter, CIA stated that it could neither confirm nor deny the existence or nonexistence of records responsive to Plaintiff's requests. Williams Decl. ¶ 10; *see also* Ex. G. CIA cited FOIA Exemptions 1 and 3, *see* 5 U.S.C. §§ 552(b)(1), (b)(3), and specified, as relevant sources, Section 3.6(a) of Executive Order 13526 for Exemption 1, and Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, and Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1), for Exemption 3. Williams Decl. ¶ 10; *see also* Ex. G.

21. In its final response letter, CIA also conveyed that it had conducted a final review for additional responsive records that did not implicate its *Glomar* invocation, but found none. Williams Decl. ¶ 10; *see also* Ex. G.

22. In this case, disclosing the existence of documents responsive to Plaintiff's requests would "tend to reveal the CIA's intelligence priorities or areas of focus" and, in so doing, "disclos[e] intelligence activities, sources, and methods." Williams Decl. ¶ 17.

23. Conversely, "disclosing the nonexistence of these records might reveal intelligence gaps or areas of lessened scrutiny, which also reveals information regarding intelligence sources and methods." Williams Decl. ¶ 17.

24. "Terrorist organizations, foreign intelligence services, and other hostile groups continually gather details regarding the CIA's specific intelligence capabilities, authorities, and interests and attempt to use this information to their advantage." Williams Decl. ¶ 18.

25. "In order to effectively collect and analyze foreign intelligence and counterintelligence, [CIA] must avoid disclosing the subjects of its collection and the manner in which the Agency pursues its targets." Williams Decl. ¶ 18.

26. "Confirming or denying the existence of responsive documents concerning people, locations, or organizations at issue in . . . Plaintiff's FOIA requests, and, as a consequence, highlighting the methods by which Agency officers engage in intelligence gathering as well as other sources and methods, could reasonably be expected to cause damage to national security because such an admission would reveal broader patterns about the intelligence collection priorities of the Agency and sensitive details about the nature and/ or scope of the CIA's intelligence sources, methods, and activities, which could, in turn, be exploited by adversaries." Williams Decl. ¶ 18.

## V. <u>Segregability</u>

27. In performing its search, CIA "conducted a page-by-page and line-by-line review of these documents, and released all reasonably segregable, non-exempt information." Williams Decl. ¶ 30.

28. “After reviewing the records at issue, [Ms. Williams] . . . determined no additional information can be released without jeopardizing statutorily-protected information or individuals’ personal privacy that outweighs the public’s interest in disclosure.” Williams Decl. ¶ 30.

Dated: August 21, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ William Thanhauser*
WILLIAM THANHAUSER
D.C. Bar #1737034
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*