UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>Defendant. | Civil Action No. 24-1537 (PLF) |

**DECLARATION OF MEREDITH Di LIBERTO**

I, Meredith Di Liberto, declare the following to be true and correct:

1. I am an attorney with Judicial Watch, Inc. and represent Plaintiff in this action. Accordingly, I have personal knowledge of the matters set forth herein.

2. On February 10, 2025, counsel for Defendant informed Plaintiff that the initial search "picked up a large number of records" and requested that Plaintiff exclude "emails circulating publicly available news reports" to decrease the number of responsive records.

3. Plaintiff asked Defendant for an approximate universe of records found during the initial search, but Defendant refused to provide any further information.

4. Plaintiff agreed to exclude publicly available news reports that were not commented on from the search.

5. On August 22, 2025, Defendant produced two partially redacted records in response to Plaintiff's requests. The cover letter identified the subject matter of all three requests and did not distinguish which request the records were responsive to. Memorandum in Support of Defendant's Motion for Summary Judgment (Def's Mem.), Exhibit F (ECF No. 20-6).

6. The records consisted of two letters dated April 4, 2024 and June 24, 2024, written by Defendant's acting Director of Congressional Affairs (name redacted) and Director of Congressional Affairs. *Id*. at ¶. Both letters were replies from Defendant to congressional letters expressing concern about the CIA's alleged interference in Hunter Biden's federal tax investigation. *Id*. The Defendant's April 4, 2024, response stated that the allegation of CIA interference was false. *Id*.

7. In subsequent Joint Status Reports filed by the parties, Defendant represented that it would "endeavor to provide an estimate on the number of anticipated productions." Joint Status Reports (ECF No. 13 at ¶ 2; ECF No. 14 at ¶ 2). Defendant never provided this estimate.

8. In the December 29, 2025, Joint Status Report, Defendant stated that after it made the second record production in March 2026, it would return to "making further productions approximately every ninety days." Joint Status Report (ECF No. 16) at ¶ 2.

9. On March 19, 2026, Defendant issued a *Glomar* response pursuant to Section 3.6a of Executive Order 13526. Def's Mem., Exhibit G (ECF No. 20-7). The letter stated that the denial of "this portion of your request" was based on Exemptions 1 and 3 but did not explain which "portion" was protected or differentiate it from the portion for which the agency conducted a search. *Id*.

10. On June 15, 2026, Plaintiff reached out to Defendant to seek clarification on how Defendant conducted its search, the number of records that resulted from the search, and the legal authority Defendant relied on for its responses. Plaintiff also requested a draft search declaration. Defendant declined to offer any information outside of briefing.

11. Attached hereto as Exhibit A is a true and correct copy of the March 21, 2024, letter from the House Oversight Committee to CIA Director, William J. Burns.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Upper Holland, Pennsylvania, on September 21, 2026.

*/s/ Meredith Di Liberto*
Meredith Di Liberto

# EXHIBIT A

# Congress of the United States
Washington, DC 20515

March 21, 2024

The Honorable William J. Burns
Director
Central Intelligence Agency
Washington, D.C. 20505

Dear Director Burns:

The House Committee on Oversight and Accountability (Oversight Committee) and the House Committee on the Judiciary (Judiciary Committee, collectively, the Committees) are investigating whether sufficient grounds exist to draft articles of impeachment against President Biden for consideration by the full House.[1] Along with the House Committee on Ways and Means (Ways and Means Committee), the Committees set forth in a September 27, 2023, memorandum the evidence justifying the inquiry and scope of this impeachment investigation.[2] On December 13, 2023, the House of Representatives adopted a resolution directing the Committees to continue this investigation.[3] Recently, the Committees received information from a whistleblower alleging that the Central Intelligence Agency (CIA) intervened in the investigation of Hunter Biden to prevent the Internal Revenue Service (IRS) and the Department of Justice (DOJ) investigators from interviewing a witness. We therefore write to request relevant material from the CIA.

As part of the impeachment inquiry, the Committees are investigating, among other things, whether President Biden "abuse[d] his power as President to impede, obstruct, or otherwise hinder investigations or the prosecution of Hunter Biden."[4] As background, for years, the IRS and DOJ had been investigating Hunter Biden for tax crimes.[5] The Committees have documented how the DOJ deviated from its standard processes to afford preferential treatment to Hunter Biden.[6] The Committees learned about the deviations in the spring of 2023 after two brave whistleblowers testified to Congress that DOJ officials deviated "from the normal process that provided preferential treatment, in this case to Hunter Biden . . . ."[7] Among other deviations,

---

[1] *See* H. Res. 918, 118th Cong. (2023) [H. Res. 918]); Memorandum from Hon. James Comer, Chairman, H. Comm. on Oversight & Accountability, Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, & Hon. Jason Smith, Chairman, H. Comm. on Ways & Means, to H. Comm. on Oversight & Accountability, H. Comm. on the Judiciary, & H. Comm. on Ways & Means. Re: Impeachment Inquiry (Sept. 27, 2023) [hereinafter Impeachment Inquiry Memorandum].
[2] *See* Impeachment Inquiry Memorandum.
[3] *See* H. Res. 918.
[4] Impeachment Inquiry Memorandum at 29.
[5] Transcribed Interview of Gary Shapley, Supervisory Special Agent, Internal Revenue Serv. at 12 (May 26, 2023).
[6] *See* H. COMM. ON THE JUDICIARY ET AL., 118TH CONG., THE JUSTICE DEPARTMENT'S DEVIATIONS FROM STANDARD PROCESSES IN ITS INVESTIGATION OF HUNTER BIDEN (2023).
[7] Shapley Interview at 10.

DOJ officials restricted what investigative steps the investigators could pursue, tipped off Hunter Biden's attorneys about investigative steps, and even prevented investigators from conducting witness interviews.[8] The whistleblowers' testimony about the preferential treatment provided to Hunter Biden has been corroborated by testimony from other witnesses and documents the Committees have received.[9]

The information we recently received from the whistleblower seems to corroborate our concerns about DOJ's deviations from standard process to provide Hunter Biden with preferential treatment. According to the whistleblower, in August 2021, when IRS investigators were preparing to interview Patrick Kevin Morris, an associate of Hunter Biden, the CIA intervened to stop the interview. Two DOJ officials were allegedly summoned to CIA headquarters in Langley, Virginia for a briefing regarding Mr. Morris. At that meeting, it was communicated that Mr. Morris could not be a witness during the investigation.

It is unknown why or on what basis the CIA allegedly intervened to prevent investigators from interviewing Mr. Morris. However, these allegations track with other evidence showing how the DOJ deviated from its standard investigative practices during the investigation of Hunter Biden. Accordingly, to further the Committees' ongoing oversight and impeachment inquiry, please provide the following documents and information:

1. All documents and communications referring or relating to the Department of Justice and/or Internal Revenue Service investigation of Robert Hunter Biden; and

2. All documents and communications referring or relating to Patrick Kevin Morris, including but not limited to efforts to interview Mr. Morris as part of the investigation of Robert Hunter Biden.

Please provide the information requested as soon as possible but no later than 5:00 p.m. on April 4, 2024. If you have any questions about this request, please contact Judiciary Committee staff at (202) 225-6906.

Thank you for your prompt attention to this matter.

Sincerely,

James Comer
Chairman
Committee on Oversight and Accountability

Jim Jordan
Chairman
Committee on the Judiciary

---

[8] H. COMM. ON THE JUDICIARY ET AL., 118TH CONG., THE JUSTICE DEPARTMENT'S DEVIATIONS FROM STANDARD PROCESSES IN ITS INVESTIGATION OF HUNTER BIDEN, at 1-3 (2023).
[9] *See id.*

cc: The Honorable Jamie Raskin, Ranking Member
Committee on Oversight and Accountability

The Honorable Jerrold L. Nadler, Ranking Member
Committee on the Judiciary