UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br>Plaintiff,<br>v.<br>CENTRAL INTELLIGENCE AGENCY,<br>Defendant. | Civil Action No. 24-1537 (PLF) |

**DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


Table of Contents .......... i

Table of Authorities .......... i

Argument .......... 1

I. CIA Performed an Adequate Search. .......... 1

II. CIA Properly Invoked *Glomar*. .......... 6

Conclusion .......... 11


## TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**


*ACLU v. CIA*,
710 F.3d 422 (D.C. Cir. 2013) .......... 10

*Adams v. CIA*,
Civ. A. No. 20-0377 (TNM), 2023 WL 1778191 (D.D.C. Feb. 6, 2023) .......... 7

*Bin Ali Jaber v. Dep't of Def.*,
293 F. Supp. 3d 218 (D.D.C. 2018) .......... 3

*Bolze v. Exec. Off. for U.S. Att'ys*, Civ. A.,
No. 17-2858 (FYP), 2021 WL 5564633 (D.D.C. Nov. 29, 2021) .......... 3

*Brehm v. Dep't of Def.*,
593 F. Supp. 2d 49 (D.D.C. 2009) .......... 3

*Budik v. Dep't of Army*,
742 F. Supp. 2d 20 (D.D.C. 2010) .......... 2

*Coffey v. Bureau of Land Mgmt.*,
277 F. Supp. 3d 1 (D.D.C. 2017) .......... 3

*Ctr for Nat'l Sec. Studies v. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) .......... 8, 9

*James Madison Project v. Dep't of Justice*,
330 F. Supp. 3d 192 (D.D.C. 2018) .......... 8, 10

*Leopold v. Dep't of Justice*,
130 F. Supp. 3d 32, (D.D.C. 2015) .......... 3

*Oglesby v. Dep't of the Army*,
920 F.2d 57 (D.C. Cir. 1990) .......... 2

*Porter v. CIA*,
778 F. Supp. 2d 60 (D.D.C. 2011) .......... 3

*Project for Privacy & Surveillance Accountability, Inc. v. Dep't of Justice*,
143 F. 4th 506 (D.C. Cir. 2025) .......... 5

*Project for Privacy & Surveillance Accountability, Inc. v. Dep't of Justice*,
Civ. A. No. 24-1940 (RC), 2025 WL 3240253 .............................................................. 8
*Project for Privacy & Surveillance Accountability, Inc. v. NSA*, Civ. A.,
No. 22-1812 (RC), 2024 WL 68244 (D.D.C. Jan. 5, 2024)...................................................... 8
*Schaerr v. Dep't of Justice*,
435 F. Supp. 3d 99 (D.D.C. 2020) ........................................................................................ 7
*Smythe v. NSA*, Civ. A.,
No. 25-2781 (JEB), 2026 WL 2150429 (D.D.C. July 27, 2026)......................................... 7, 8
*Steinberg v. Dep't of Justice*,
23 F.3d 548 (D.C. Cir. 1994)................................................................................................ 2
*Ullah v. CIA*,
435 F. Supp. 3d 177 (D.D.C. 2020)....................................................................................... 8
*Wolf v. CIA*,
473 F.3d 370 (D.C. Cir. 2007) .............................................................................................. 7

**<u>Statutes and Other Authorities</u>**

5 U.S.C. §§ 552(b)(1) ........................................................................................................... 4
50 U.S.C. § 3507.................................................................................................................... 4
50 U.S.C § 3024(i)(1) ............................................................................................................ 4
Executive Order 13526 .......................................................................................................... 6

**<u>Rules</u>**

Federal Rule of Civil Procedure 56(b)..................................................................................... 1

Defendant the Central Intelligence Agency ("CIA") respectfully files this combined opposition to Plaintiff Judicial Watch, Inc.'s cross-motion for summary judgment (ECF No. 22; "Pl.'s Cross-Mot.") and reply in further support of its motion for summary judgment (ECF No. 20; "Def.'s Mot.") in this action brought under the Freedom of Information Act ("FOIA"). For the reasons stated below, the Court should grant summary judgment for Defendant.[1]

## ARGUMENT

### I. <u>CIA Performed an Adequate Search.</u>

In its motion and accompanying declaration, CIA explained its search process for records responsive to Plaintiff's FOIA requests. Def.'s Mot. at 5-7. CIA noted that Plaintiff's FOIA requests sought records concerning any Department of Justice ("DOJ") or Internal Revenue Service ("IRS") investigation of Hunter Biden, and any interactions between CIA and DOJ regarding Hunter Biden and Kevin Morris; and, accordingly, that its search terms reflected each individual's name, additional name variants, and, for Hunter Biden, limiting terms. *Id.* at 5-6. CIA further explained that the limiting terms in these searches were intended to restrict its results to records "that reflect an open or otherwise acknowledged relationship between the[se] individuals . . . and the CIA." *Id.* at 6-7. And, to the extent Plaintiff's requests sought records that would reveal a classified or unacknowledged association between these individuals and the CIA, the CIA issued a *Glomar* response, refusing to confirm or deny the existence of any responsive records. *Id.* at 7.

---

[1] Plaintiff is not challenging CIA's redaction of information under FOIA Exemptions 3 and 6, *see* Def.'s Mot. at 12-16. Pl.'s Cross-Mot. at 5 n.4. In addition, Plaintiff does not put forth any argument specifically challenging CIA's statement that it released all reasonably segregable non-exempt information. *See* Def.'s Mot. at 16-17.

In response, Plaintiff makes three arguments challenging the adequacy of CIA's search. Pl.'s Cross-Mot. at 6-10. First, Plaintiff claims that CIA's "fail[ure] to list the additional name variants" constituted vagueness that did "not fulfill the agency's duty to reasonably describe the search." *Id.* at 7. Second, Plaintiff challenges CIA's different treatment of Patrick Kevin Morris and Robert Hunter Biden, noting that the Biden searches were "gated by limiting terms"—i.e., "laptop" or "51 formers"—while the Morris search was not, and contending that CIA "does not account for this disparity." *Id.* at 7-8. Third, Plaintiff argues that the limiting terms used by CIA for the Biden searches were themselves unreasonable as they were "not relevant in any way to Plaintiff's FOIA requests." *Id.* at 8; *see also id.* (stating that its requests "had absolutely nothing to do with Hunter Biden's laptop"). Each of Plaintiff's arguments is without merit.

Plaintiff's first argument—that CIA's "fail[ure] to list the additional name variants" constituted unreasonable vagueness—is both at odds with Circuit case law and undermined by the subject FOIA requests. Under Circuit case law, a search declaration need not "set forth with meticulous documentation the details" of the search; rather, the declaration need only show "that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). As Plaintiff notes, the wholesale failure of a search declaration to identify "the terms searched or explain how the search was conducted" is insufficient. *Id.* But here, CIA provided its search terms, specifying four name variants and noting that "multiple [additional] variants . . . were used to ensure that the results were as comprehensive as possible." *See* Williams Decl. ¶ 26. In so doing, although CIA "could have hypothetically been more detailed," its declaration "does not prevent the Court from concluding that [CIA] has satisfactorily demonstrated the adequacy of its search." *Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 31 (D.D.C. 2010); *see also Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)

(holding that, to be sufficiently detailed, an agency search affidavit must describe "what records were searched, by whom, and through what process"). Plaintiff points to no cases to support her argument otherwise. *See* Pl.'s Cross-Mot. at 7.

To wit, the specified search terms in CIA's declaration were all those provided in Plaintiff's FOIA requests. In those requests, Plaintiff only used the names "Robert Hunter Biden," "Hunter Biden," "Patrick Kevin Morris," and "Kevin Morris," and did not propose additional name variants. *See* Exs. A–C to Def.'s Mot. (ECF Nos. 20-1, 20-2, & 20-3). Plaintiff cannot now fault CIA's declaration for specifying those name variants, but not the others it used, when Plaintiff's FOIA requests did not itself specify any additional name variants—and Plaintiff, through its cross-motion, does not even do so now. *See, e.g. Bin Ali Jaber v. Dep't of Def.*, 293 F. Supp. 3d 218, 230 (D.D.C. 2018) (finding agency search adequate where agency used "all the name variants provided in [the plaintiff's] request letter"); *Leopold v. Dep't of Justice*, 130 F. Supp. 3d 32, (D.D.C. 2015) (finding agency search adequate where it used the terms provided by the requester); *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 9-10 (D.D.C. 2017) (same). Moreover, courts in this District have themselves used the shorthand "name variants" and "variants thereof" to describe names searched by a defendant agency, thus further undermining Plaintiff's assertion of vagueness. *See, e.g.*, *Bolze v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 17-2858 (FYP), 2021 WL 5564633, at *6 (D.D.C. Nov. 29, 2021); *Porter v. CIA*, 778 F. Supp. 2d 60, 64 (D.D.C. 2011); *Brehm v. Dep't of Def.*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009).

Plaintiff's second argument—that CIA's inclusion of limiting terms for its Biden searches, but not for its Morris search was unexplained—likewise fails. For Biden, Plaintiff's FOIA requests explicitly and exclusively sought records concerning any "[DOJ] or [IRS] investigation" of him. *See* Ex. A to Def.'s Mot. (ECF No. 20-1); *see also* Ex. B to Def.'s Mot. (ECF No. 20-2) (seeking

"[a]ll records of communications . . . between officials of the CIA and officials of [DOJ] regarding Hunter Biden"). In contrast, for Morris, Plaintiff's FOIA requests did not seek records concerning any investigation of him—Plaintiff merely sought records "referring or relating" to Morris, particularly those related to CIA's efforts to interview Morris as part of its investigation of Biden, and records of communications between CIA and DOJ officials regarding Morris. *See* Exs. A and C to Def.'s Mot. (ECF Nos. 20-1 & 20-3). Accordingly, CIA's searches necessarily treated the two individuals differently, applying limiting terms to the Biden searches, which sought investigatory records generally protected under *Glomar*, but not to the Morris search, which did not seek any such records for Morris. Far from "not account[ing] for this disparity," Pl.'s Mot. at 8, the basis for CIA's differential treatment is readily ascertainable from Plaintiff's FOIA requests themselves, which treat Biden and Morris differently, and from CIA's declaration, which explained the scope of the agency's *Glomar* response. *See* Williams Decl. ¶¶ 10, 26.

Plaintiff's third argument—that the limiting terms used by CIA for its Biden searches were themselves unreasonable—misunderstands the basis for CIA's use of "laptop" and "51 formers" as limiting terms in the Biden search. As CIA explained in its motion and accompanying declaration, the agency's searches looked for "records responsive to Plaintiff's requests that were not covered by the *Glomar* response." Williams Decl. ¶ 26. CIA's *Glomar* response extended to "records, if any exist, that would reveal an unacknowledged or classified association with" Biden, as the subject of a law enforcement investigation. *Id.* ¶ 10 (quoting Ex. G to Def.'s Mot. (ECF No. 20-7)); *see also id.* ¶ 15 (explaining that CIA "consistently issues *Glomar* responses when—as is the case here—a FOIA request seeks information concerning the CIA's involvement in law enforcement investigations"). CIA had previously acknowledged having unclassified documents pertaining to Congress's investigation of Biden in "the Hunter Biden laptop scandal," Pl.'s Cross-

Mot. at 8 n.6. *See, e.g.*, U.S. House of Representatives, Committee on the Judiciary, *The Intelligence Community 51: How CIA Contractors Colluded with the Biden Campaign to Mislead American Voters* (June 25, 2024), attached as Exhibit 1; N.Y. Post, *FBI 'verified' authenticity of Hunter Biden's abandoned laptop in November 2019: IRS whistleblower* (June 23, 2023), https://perma.cc/38N9-9M6H. Accordingly, rather than issuing a full *Glomar* response to the portion of Plaintiff's request on Biden, CIA conducted a search only for records that would not fall under *Glomar*—i.e., records that concerned the aforementioned acknowledged, unclassified association. And although Plaintiff contends that its FOIA requests had "absolutely nothing to do with Hunter Biden's laptop," Pl.'s Cross-Mot. at 8, its FOIA requests were, in fact, broadly stated and not limited to exclude records related to that investigation. *See, e.g.*, Ex. A to Def.'s Mot. (ECF No. 20-1) (seeking "[a]ll documents and communications referring or relating to the [DOJ] or [IRS] investigation of Robert Hunter Biden, DPOB: February 4, 1970, Wilmington, DE"). Thus, CIA issued a partial *Glomar* and proceeded to conduct the above-described, limited search.[2] *See Project for Priv. & Surveillance Accountability, Inc. v. Dept. of Justice,* 143 F. 4th 506, 511 (D.C. Cir. 2025) ("FOIA, after all, does not require searches for their own sake" and, accordingly, a search is not required to the extent a *Glomar* response is asserted). In attempting to fault CIA for this approach, Plaintiff simply misunderstands the scope of CIA's *Glomar* response, and the agency's reasonable efforts to conduct a search for records that would not fall under such response.

Finally, in concluding its arguments challenging the adequacy of CIA's search, Plaintiff remarks that "it is unclear whether [CIA] excluded ***all*** publicly available news reports or only those

---

[2] In a footnote, Plaintiff faults CIA for not "requesting narrowing terms from Plaintiff." Pl.'s Cross-Mot. at 8 n.5. However, because CIA's search necessarily could only cover the aforementioned acknowledged, unclassified association, there was no need to request any narrowing terms from Plaintiff.

not commented on per the parties' agreement." Pl.'s Cross-Mot. at 9 (emphasis in original). Plaintiff's purported confusion is unreasonable. In the accompanying declaration to its motion, CIA stated: "The Plaintiff agreed to exclude publicly-available news reports without commentary from the universe of records responsive to its FOIA requests. The CIA then re-ran its searches with the news reports excluded." Williams Decl. ¶ 27. Plaintiff's misreading of this statement—and a similar statement in Defendant's Statement of Undisputed Material Facts, *see* Pl.'s Cross-Mot. at 9 (citing Def.'s Statement of Undisputed Material Facts (ECF No. 20-10) ¶¶ 9-10)—as indicating that CIA *sub silentio* went back on its agreement, and excluded all publicly available news reports, is without basis.

## II. CIA Properly Invoked *Glomar*.

In its motion and accompanying declaration, CIA explained that its *Glomar* response arose from the agency's invocation of both FOIA Exemption 1 (via Executive Order 13526) and Exemption 3. Def.'s Mot. at 7-16. As to FOIA Exemption 1, CIA's declaration set out that the attestant was an original classification authority; that the records sought are owned by and under the control of the U.S. government; that the information requested concerns "intelligence activities (including covert action), [or] intelligence sources or methods" which are covered by Executive Order 13526; and that the disclosure of the existence or non-existence of responsive records would result in damage to national security by tending to reveal "CIA's intelligence priorities or areas of focus concerning certain people," and, in so doing, "disclos[e] intelligence activities, sources, and methods." *Id.* at 8-10. As to FOIA Exemption 3, CIA explained that, for the same reasons, disclosure of the existence or non-existence of responsive records fell within coverage of Section 102A(i)(1) of the National Security Act, which protects "intelligence sources and methods from unauthorized disclosure." *Id.* at 11-12.

In response, Plaintiff argues that CIA's *Glomar* response is "not logically or plausibly tied to" Exemptions 1 or 3, because it fails to "explain even generally what sources or methods would be implicated in *these* records." Pl.'s Cross-Mot. at 11-12 (emphasis in original). Plaintiff's argument, however, seeks to subvert *Glomar*, by asking the agency to reveal the very sources and methods that CIA has asserted warrant protection. CIA has explained that "[d]isclosing the existence of responsive documents [here] would tend to reveal the CIA's intelligence priorities or areas of focus concerning certain people," Williams Decl. ¶ 17, and, in so doing, could reveal "previously undisclosed information about CIA resources, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, and/or resources, or the lack thereof." *Id.* ¶ 15. And CIA is afforded "substantial weight . . . concerning the details of the classified status of the disputed record." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted). Plaintiff, in opposition, ignores CIA's explanation and the deference afforded to it, demanding disclosure. But Plaintiff's insistence is not a basis for disclosure. Indeed, courts in this District have repeatedly upheld the federal government's invocation of *Glomar* on the above-described grounds. *See, e.g.*, *Adams v. CIA*, Civ. A. No. 20-0377 (TNM), 2023 WL 1778191, at *3 (D.D.C. Feb. 6, 2023) (upholding invocation of *Glomar* where declaration explained that disclosure "would reveal CIA intelligence targets and strategies"); *Schaerr v. Dep't of Justice*, 435 F. Supp. 3d 99, 113 (D.D.C. 2020) (same for "NSA's intelligence . . . sources and methods"). *Smythe v. NSA*, Civ. A. No. 25-2781 (JEB), 2026 WL 2150429, at *4-5 (D.D.C. July 27, 2026) (same, following NSA's explanation that "information revealing whether NSA has or has not been engaged in collecting intelligence on a specific individual that NSA has not publicly acknowledged collection on, is currently and properly classified").

Plaintiff next contends that CIA has failed "to demonstrate that confirming or denying the existence of the records would harm national security," because its "requests do not implicate anything remotely connected to national security." Pl.'s Cross-Mot. at 12. Here, again, Plaintiff ignores the explanation provided in CIA's accompanying declaration, which expressly applied to Plaintiff's FOIA requests. As CIA set out there, foreign intelligence services and other hostile groups "continually gather details regarding the CIA's specific intelligence capabilities, authorities, and interests and attempt to use this information to their advantage." Williams Decl. ¶ 18. Accordingly:

> Confirming or denying the existence of responsive documents concerning people, locations, or organizations at issue in the Plaintiff's FOIA requests, and, as a consequence, highlighting the methods by which Agency officers engage in intelligence gathering as well as other sources and methods, reasonably could be expected to cause damage to national security because such an admission would reveal broader patterns about the intelligence collection priorities of the Agency and sensitive details about the nature and/or scope of the CIA's intelligence sources, methods, and activities, which could, in turn, be exploited by adversaries.

*Id.* Far from "far-fetched," Pl.'s Cross-Mot. at 13, this explanation is reasonable and has been upheld by other courts in this District, considering similar requests. *See, e.g.*, *Project for Privacy & Surveillance Accountability, Inc. v. NSA*, Civ. A. No. 22-1812 (RC), 2024 WL 68244, at *6 (D.D.C. Jan. 5, 2024) (upholding *Glomar* response issued for records concerning specific individuals, on national security ground, and reasoning that "by revealing information regarding the Agencies' technical capabilities and limitations—information that would, in turn, make it easier for adversaries or individuals to avoid data collection efforts in the future"); *Project for Privacy & Surveillance Accountability, Inc. v. Dep't of Justice*, Civ. A. No. 24-1940 (RC), 2025 WL 3240253, at* (D.D.C. Nov. 20, 2025) (same, remarking that defendant agency's explanation that "[o]nce the fact of an intelligence activity, method, or source's use or non-use in a certain situation or against a certain target is discovered, its continued successful use is seriously

jeopardized," thus impacting national disclosure, "makes sense") *cf. James Madison Project v. Dep't of Justice*, 330 F. Supp. 3d 192, 216 (D.D.C. 2018) (upholding *Glomar* response issued for records concerning whether the President was the target of any investigation, on grounds of Exemption 7(A)). Moreover, "this Circuit's FOIA caselaw cautions strongly against second-guessing the Government's discretionary decisions in national security," *Ullah v. CIA*, 435 F. Supp. 3d 177, 184 (D.D.C. 2020), requires "defer[ence] to executive affidavits predicting harm to national security" and considers "it unwise to undertake searching judicial review." *Ctr for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). The Court should do the same here, and reject Plaintiff's argument challenging CIA's explanation of the national security issues at stake.

Finally, in two short paragraphs at the end of its cross-motion, Plaintiff argues that CIA "has already disclosed enough information publicly that admitting the existence or nonexistence of the requested records will not cause any harm." Pl.'s Cross-Mot. at 11, 14-15. In support, Plaintiff points to a letter to Congress wherein CIA stated:

> Thank you for your March 21, 2024 letter related to an investigation of Hunter Biden. The letter cites a whistleblower allegation that [CIA] sought to prevent [IRS] and [DOJ] investigators from interviewing Patrick Kevin Morris. Without confirming or denying the existence of any associations or communications, CIA did not prevent or seek to prevent IRS or DOJ from conducting any such interview. The allegation is false.

Ex. F to Def.'s Mot. at 4 (ECF No. 20-6). Plaintiff is incorrect that this language amounts to an official acknowledgment of the requested information by prior disclosure, so as to warrant release. *See* Pl.'s Mot. at 14. On its face, the statement is a *Glomar* response, refusing to confirm or deny the existence of any associations or communications related to an investigation of Hunter Biden. That the statement "identifies the controversy," *id.*, by summarizing the question to which it is responding is of no import. So, too, CIA's denial in the last sentence of the quoted language. Read

in context, that sentence is a denial of the allegation that CIA "prevent[ed] or s[ought] to prevent IRS or DOJ" from interviewing Hunter Biden's attorney, Patrick Kevin Morris, as part of any IRS or DOJ investigation—not a denial of the existence (or non-existence) of any such investigation. *See* Ex. F to Def.'s Mot. at 4 (ECF No. 20-6). Indeed, in the next paragraph of the letter, CIA states that, as a general matter, it is not itself responsible for "any ongoing federal law enforcement investigation or prosecution" and merely "facilitates [DOJ's] access to national security information in the context of investigations and prosecutions in a variety of circumstances." *Id.* In short, the text of the letter demonstrates that the statement is not what Plaintiff says it is.

Moreover, "to overcome an agency's *Glomar* response when relying on an [alleged] official acknowledgement, 'the requesting plaintiff must *pinpoint* an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." *James Madison Project*, 302 F. Supp. 3d at 21 (internal citations omitted). Under this standard, the disclosure must "leave no doubt" that the agency possesses the requested records. *ACLU v. CIA*, 710 F.3d 422, 429 (D.C. Cir. 2013). Here, Plaintiff's conclusory statement that the cited language amounts to a prior official disclosure wholly fails to meet this standard. In fact, as discussed above, CIA explicitly refused to "confirm[] or deny[] the existence of any associations or communications." Ex. F to Def.'s Mot. at 4 (ECF No. 20-6).

* * *

## CONCLUSION

For these reasons, and those set forth in its motion, summary judgment should be granted for Defendant and Plaintiff's cross-motion denied.

Dated: October 20, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *__/s/ William Thanhauser__*
WILLIAM THANHAUSER
D.C. Bar #1737034
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*